**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SE-KURE CONTROLS, INC.,           ) | |
|       ) | |
|     **Plaintiff/Counter-Defendant,**  ) | |
|       ) | |
|     **v.**      ) | |
|       ) | |
| DIAM USA, INC.,       ) | |
|       )   **06 C 4857** | |
|     **Defendant/Counter-Plaintiff,**  ) | |
|       )   **Judge Ronald A. Guzmán** | |

Se-Kure Controls, Inc., Plaintiff/Counter-Defendant,

v.

Diam USA, Inc., Defendant/Counter-Plaintiff,

06 C 4857

Pop Displays, USA, LLC (successor in interest to Diam, USA, Inc.), Third-Party Plaintiff,

v.

Telefonix, Inc., Third-Party Defendant,

Judge Ronald A. Guzmán

Telefonix, Inc., Cross-Claim Plaintiff,

v.

Se-Kure Controls, Inc. Cross-Claim Defendant.

**MEMORANDUM OPINION AND ORDER**

Se-Kure Controls, Inc. ("Se-Kure") has sued Diam USA, Inc. ("Diam") for infringement of U.S. Patent No. RE37,590 E ("the '590 Patent"). Pursuant to Federal Rule of Civil Procedure ("Rule") 56, defendants Diam; Pop Displays USA, LLC ("POP Displays"); and third-party

1

defendant Telefonix, Inc. ("Telefonix") (collectively hereinafter "defendants") have moved for summary judgment on the issue of invalidity under 35 U.S.C. § 103.  For the reasons provided herein, the Court grants defendants' motion.

## **Facts**

Plaintiff Se-Kure is an Illinois corporation that designs, manufactures, and sells retail security systems.  (Pl.'s LR 56.1(b)(3)(B) ¶ 1; Am. Compl. ¶ 9.)  Defendant POP Displays, a successor in interest to Diam, is a Delaware corporation with a principal place of business in New York.  (Pl.'s LR 56.1(b)(3)(B) ¶ 2; Am. Compl. ¶ 6.)  POP Displays has sued third-party defendant Telefonix, a corporation located in Illinois, for indemnification.  (Pl.'s LR 56.1(b)(3)(B) ¶ 5; *see* Third-Party Compl. ¶¶ 9, 10.)

On June 10, 1994, Se-Kure filed a patent application for a retractable sensor for an alarm system on behalf of Roger Leyden ("Leyden") and Terrance Surma ("Surma"), the named inventors.  (*See* Am. Compl., Ex. A, U.S. Patent No. 5,552,771 at 1.)  On September 3, 1996, the application issued as U.S. Patent No. 5,552,771 ("the '771 Patent").  (*Id.*)

Leyden and Surma submitted the '771 Patent for a reissue proceeding before the U.S. Patent and Trademark Office ("USPTO") on February 19, 1997.  (Defs.' Mot. Summ. J., Ex. 1, '590 Patent at 1.)  After reexamining the '771 Patent, the USPTO issued the '590 Patent.  (*Id.*)

The abstract of the '590 Patent, entitled "Retractable Sensor for an Alarm System," states:

A retractable sensor assembly for use with an alarm system to prevent theft of valuable products while eliminating the problem of entangled and unsightly sensor cords is disclosed.  The retractable sensor allows the user to grasp the

product and pull it to a comfortable position. The invention consists of a
housing, a retractor means contained in the housing, a sensor having two states,
1) secured when attached to the product, and 2) unsecured when detached from
the product, a multiconductor cable having a first end connected to the sensor,
cooperating with the retraction means and a second end extending out of the
housing, where the retraction means urges the sensor to the housing, yet allows
the sensor to be pulled from the housing when an external force is exerted on
the sensor, while maintaining a continuous electrical path from the first, sensor
end of the cable to the second end of the cable.

(*See id.* at 1.)

Plaintiff asserts that Diam has infringed and continues to infringe the '590 Patent by
manufacturing and selling merchandise security systems that employ retractable multiconductor
cables and sensors. (Am. Compl. ¶ 20.) Defendants argue that the '590 Patent is invalid under
35 U.S.C. § 103 because it is an obvious combination of U.S. Patent No. 5,172,098 ("the '098
Patent") and U.S. Patent No. 4,989,805 ("the '805 Patent"). (*See* Defs.' Mem. Supp. Mot.
Summ. J. 11-12.) The '098 Patent is owned by plaintiff and was issued on December 5, 1992.
(Pl.'s LR 56.1(b)(3)(B) ¶ 17.) The '098 prior art patent and the '590 Patent-at-issue have the
same inventors, Surma and Leyden. (*Id.*) The '098 Patent is entitled "Alarm System Sensing
and Triggering Apparatus," and its abstract reads:

An alarm system remotely detects a sensor being attached to or detached from a
product. The sensor has a secured state and an unsecured state. The sensor is in

the secured state when attached to the product and in the unsecured state when detached from the product. The sensor includes an indicator for indicating the state of the sensor. A detector electrically connected to the sensor determines the state of the sensor. The detector provides a control signal in response to the state of the sensor. The control signal controls the indicator. An alarm is electrically connected to the detector and is responsive to the control signal for indicating the state of the sensor.

(Defs.' Mot. Summ. J., Ex. 2, '098 Patent, Title, Abstract.) The '098 Patent contains twenty claims, five of which are independent claims. (*See id.*, cols. 9-12.) Notably, the '098 Patent teaches that a retractable cord may be used in the alarm system. (*See* Defs.' Mot. Summ. J., Ex. 2, '098 Patent, col. 4, lines 22-24.)

The '805 Patent, invented by Mr. Paul Burke ("Burke"), is entitled "Retractable Reel Assembly for Telephone Extension Cord," and its abstract reads:

To provide a highly functional yet very compact retractable reel assembly for a telephone extension cord, a housing is provided which is adapted to be mounted on a wall in proximity to a telephone or telephone jack for utilization with either wall mounted or table telephones, respectively. The retractable reel assembly includes a reel biased for rotation in one direction, a ratchet for selectively restraining rotation of the reel in the one direction, and an expansion chamber for a length of the cord within the housing, whereby the portion of the cord leading to the telephone or telephone jack can normally be wound in a

4

radially and axially confined planar helical array.  With this arrangement, the

retractable reel assembly can allow the portion of the cord to be repositioned to

a radially expanded helical array during withdrawal of the remainder of the cord

from the housing and returned to the radially and axially confined helical array

during retraction of the remainder of the cord into the housing.

(Defs.' Mot. Summ. J., Ex. 5, '805 Patent, Title, Abstract.)  The '805 Patent contains

twenty claims, five of which are independent claims.  (*See id.*, cols. 9-12.)

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Initially, the moving party bears the burden of identifying those parts of the record that

establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  If the moving party successfully shows a lack of a genuine issue of material

fact, the nonmoving party must go beyond the pleadings and present specific facts to establish

that there is a genuine issue of material fact for trial.  *See* Fed. R. Civ. P. 56(e)(2); *Celotex*, 477

U.S. at 324.  In doing so, the nonmoving party must do more than show that there is some

"metaphysical doubt as to the material facts."  *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134,

1139 (7th Cir. 1997) (internal quotations omitted).  Rather, in order to defeat defendants' motion

for summary judgment, it must present significant probative evidence in support of its opposition

to the motion.  *See Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433

F.3d 1024, 1038 (7th Cir. 2006).

> Section 103 states in relevant part:
>
> [a] patent may not be obtained . . . if the differences between the subject matter
>
> sought to be patented and the prior art are such that the subject matter as a whole
>
> would have been obvious at the time the invention was made to a person having
>
> ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a) (2009).  Although a court may ultimately declare a patent invalid for

obviousness under section 103, patents issued by the USPTO enjoy a presumption of validity.

*See id.* § 282.  If a party contends that the patent-in-suit is an obvious combination of prior art

teachings, "the burden falls on the patent challenger to show by clear and convincing evidence

that a person of ordinary skill in the art would have had reason to attempt to make the

composition or device, or carry out the claimed process, and would have had a reasonable

expectation of success in doing so."  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d

1342, 1360 (Fed. Cir. 2007).  "Clear and convincing evidence has been described as evidence

which produces in the mind of the trier of fact an abiding conviction that the truth of a factual

contention is *highly probable*."  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234,

1240 (Fed. Cir. 2002) (internal quotations omitted).

Obviousness under section 103 is ultimately a question of law.  *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).  However, in *Graham*, the Supreme Court established an objective factual analysis for obviousness based on three underlying primary factors:  (1) the level of ordinary skill in the art; (2) the scope and content of the prior art; and (3) the differences between the prior art and the claimed invention.  *See id.*  Additionally, the *Graham* Court mandated a further inquiry into the existence of "such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc."  *Id.*

While applying these factors in the years following *Graham*, the Court of Appeals for the Federal Circuit established an obviousness test, which is sometimes called the "teaching, suggestion, or motivation" ("TSM") test.  *See, e.g.*, *In re Geiger*, 815 F.2d 686, 688 (Fed. Cir. 1987).  Under the TSM test, "[t]he party seeking patent invalidity based on obviousness must . . . show some motivation or suggestion to combine the prior art teachings." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-24 (Fed. Cir. 1999).  Additionally, under the test, "[a] suggestion or motivation to combine generally arises in the references themselves, but may also be inferred from the nature of the problem or occasionally from the knowledge of those of ordinary skill in the art."  *Id.* at 1324.

Recently, in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007), the Supreme Court expounded on the proper application of the TSM test.  The *KSR* Court, rejecting the Federal Circuit's "rigid" application of the test, reiterated that a teaching, suggestion, or motivation need not be explicitly present in the prior art references.  *See id.* at 414 (reversing Federal Circuit's ruling that patent-at-issue was nonobvious because the prior-art references did not specifically expound on the problem to be solved).  While upholding the validity of the TSM test, the Court

emphasized that the test's application should remain "expansive and flexible." *See id.* at 418 ("[A]s our precedents make clear . . . the [obviousness] analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."). Ultimately, the *KSR* Court found "no necessary inconsistency between the idea underlying the TSM test and the *Graham* analysis." *Id.* at 419. However, the Court added that "when a court transforms the general [TSM test] principle into a rigid rule that limits the obviousness inquiry . . . it errs." *Id.*

In the wake of *KSR*, summary judgment is appropriate when "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claims is apparent in light of these factors." *Id.* at 427. Therefore, the issues before the Court are whether: (1) plaintiff has created a genuine issue of material fact regarding any of the primary *Graham* obviousness factors applied to the '590 Patent's claims, (2) after a flexible application of the TSM test, no genuine issue of material fact exists concerning defendants' contention that a person having ordinary skill in the art would have, at the time of invention, found it obvious to combine the prior art references to arrive at the invention embodied in the '590 Patent's claims, and (3) there exists a genuine issue of material fact concerning any secondary *Graham* factors that might dislodge a preliminary finding of obviousness. *See id.*

There is no dispute as to the first *Graham* factor. The parties agree that the level of ordinary skill in the art is "an independent individual having at least five years experience with the design, development, marketing, sales, utilization, and/or configuration of retail theft

8

prevention services, including the interrelationship among the components, preferably from both the retailer's perspective and the security equipment supplier perspective." (Defs.' Mem. Supp. Mot. Summ. J. 13 n.3.)

However, plaintiff contends that there are genuine issues of material fact concerning the scope of the prior art because the '805 prior art patent is not analogous to the '590 Patent-at-issue, the second *Graham* factor. (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 14.) Indeed, "[t]he combination of elements from non-analogous sources, in a manner that reconstructs the applicant's invention only with the benefit of hindsight, is insufficient to present a *prima facie* case of obviousness." *In re Oetiker*, 977 F.2d 1443, 1447 (Fed. Cir. 1992). "Two criteria have evolved for determining whether prior art is analogous: (1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *In re Clay***, 966 F.2d 656, 658-59 (Fed. Cir. 1992). "A reference is reasonably pertinent if, even though it may be in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." *In re Icon Health & Fitness*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) (quotation omitted).

Although not in the same field of endeavor as the Patent-at-issue, the Court finds no genuine issue of material fact concerning whether the '805 Patent was reasonably pertinent to the problem with which Leyden and Surma were tasked. The retractable reel assembly disclosed in the '805 Patent sought "to provide a compact retractable reel assembly for a telephone extension cord." (Defs.' Mot. Summ. J., Ex. 5, '805 Patent, col. 1, lines 63-65). Correspondingly, the '590

Patent claims the use of telephone cord as its multiconductor cable. (Defs.' Mot. Summ. J, Ex. 1, '590 Patent, col. 5, lines 1-2.) Additionally, it is undisputed that Mr. Terrence Surma's testimony establishes that the problem prompting the invention claimed in the '590 Patent was that "the cords were laying all over." (Defs.' Mot. Summ. J., Ex. 3, Surma Dep. at 56:19-20; Pl.'s LR 56.1(b)(3) ¶ 75.) The record shows that at the time of invention, the '805 patent that teaches a compact reel assembly for a telephone cord would have reasonably commended itself the attention of an inventor tasked with solving the problem of telephone wires "laying all over." Accordingly, there exists no genuine issue of material fact concerning whether the '805 Patent was reasonably pertinent to the problem and is therefore analogous art.

Furthermore, plaintiff contends that the '590 Patent examiner considered the '805 Patent nonanalogous art and as such, there exists a genuine issue of material fact concerning the scope of the prior art. (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 15.) In support of this assertion, plaintiff points to the USPTO examiner's *Ex Parte Quayle* action, in which the examiner simply stated that retraction mechanisms for conductive cables "have substantially different requirements than an alarm system." (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. G, *Ex Parte Quayle* Action at 3.) However, nowhere in the *Ex Parte Quayle* action did the examiner explicitly state that the '805 Patent was nonanalogous art. (*See* Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. G, *Ex Parte Quayle* Action.)

Further, analogous art need not be from the same field of endeavor or have the same requirements as the system embodied in the patent-at-issue as long as the reference was reasonably pertinent to the problem with which Leyden and Surma were involved. *See In re Clay*, 966 F.2d at 659. It is notable that the USPTO issued the *Ex Parte Quayle* action on March

3, 2001, more than six years before the *KSR* decision that emphasized the relevance of references from any field reasonably pertinent to solving a particular problem. *See* 550 U.S. at 417 ("[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one.")

With respect to the third *Graham* factor, the Court finds little difference between the prior art and the claims of the '590 Patent-at-issue. *See KSR*, 550 U.S. at 422 (affirming district court's granting of summary judgment for obviousness after finding "little difference" between the prior art and the patent-at-issue.) The Court begins with an analysis of the '098 Patent. *See id.* at 424-25 (beginning comparison analysis with Asano patent). Defendants offer as fact that "the '098 Leyden patent discloses every element claimed in the '590 Patent at issue except for the type of retraction mechanism." (Defs.' LR 56.1(a)(3) ¶ 20.) Plaintiff denies this statement of fact, but does so without providing any support for this denial other than stating that "the '980 Patent does not disclose any retraction mechanism as the Court has construed the term." (Pl.'s LR 56.1(b)(3)(B) ¶ 20.)

This denial is a tacit admission that the '098 Patent discloses every element claimed in the '590 Patent except the type of retraction mechanism. *See* LR 56.1(b)(3). This denial might create a genuine issue of material fact with regard to the issue of anticipation by a *single* prior art reference, which requires all elements to be disclosed, but it does not with regard to the issue of obviousness, which is based on a combination of *multiple* prior art references. *See, e.g., Verdegaal Bros. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987) ("A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or

inherently described, in a single prior art reference.").[1]  Thus, plaintiff's admission that the '098

Patent discloses every element claimed in the '590 Patent-at-issue except the type of retraction

mechanism does not create a genuine issue with regard to obviousness.  *See* N.D. Ill. LR

56.1(b)(3)(C) ("[a]ll material facts set forth in the statement required of the moving party will be

deemed to be admitted unless controverted by the statement of the opposing party.").

       After reviewing the '805 prior art patent, the Court finds that it discloses all of the

claimed features of the retraction means claimed in the '590 Patent-at-issue as the Court has

construed it.  *See Se-Kure Controls, Inc. v. Diam USA, Inc.*, No. 06 C 4857, 2008 WL 4761674,

at *17 (N.D. Ill. June 19, 2008).  In its *Markman* opinion, the Court construed the terms "means

for retraction" and "a retraction mechanism in said housing" to mean "a spool or pulley mounted

for rotation in the housing on which the multiconductor cable is wound and a device operatively

associated with the spool or pulley for urging the spool or pulley in a direction to wind the cable

onto the spool or pulley."  *Id.*  The '805 prior art patent clearly discloses these claimed features.

(Defs.' Mot. Summ. J., Ex. 5, '805 Patent, col. 2, lines 30-39.)  Because plaintiff fails to provide

"specific references to the . . . parts of the record" that might controvert the defendants'

statement of material fact that "[t]he Burke '805 patent . . . teaches the use of a telephone cord

retraction mechanism with a spool, housing and spring," this fact is deemed admitted by

plaintiff.  *See* N.D. Ill. LR 56.1(b)(3)(A); N.D. Ill. LR 56.1(b)(3)(C); (Pl.'s LR 56.1(b)(3)(B) ¶

23.)  Therefore, the Court finds little difference between the '098 and '805 prior art of record and

the claims of the '590 Patent-at-issue and no genuine issue of material fact exists concerning the

---

[1] In fact, the '098 Patent discloses a type of cord retraction mechanism in the form of a "retractable cord."  (Defs.'
Mot. Summ. J., Ex. 2, '098 Patent, col. 4, line 23.)

relative scope of the prior art of record and the '590 Patent.  In sum, the Court finds no genuine issue of material fact regarding the three primary *Graham* factors.

Next, the Court is further required to apply the TSM test in a manner consistent with *KSR* to determine if the '590 Patent-at-issue is an obvious combination of the prior art references. The Court concludes that defendants have shown clearly and convincingly that one of ordinary skill in the art would have found it obvious to combine the alarm system sensing and triggering apparatus disclosed in the '098 Patent with the retractable reel assembly for a telephone extension cord disclosed in the '805 Patent to arrive at the invention embodied in the claims of the '590 Patent-at-issue.

"One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims."  *KSR*, 550 U.S. at 419-20.  "Under the correct analysis, *any* need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed."  *Id.* at 420 (emphasis added).  Furthermore, the Court stated that market forces can provide the impetus for creating obvious variations of known devices.  *See id.* at 417.

According to '590 Patent inventor Mr. Surma, the reason for using the retraction mechanism in the '590 Patent was because the "the cords were laying all over" resulting in "sloppy displays," and retailers "didn't like the displays being unneat."  (*See* Defs.' Mem. Supp. Mot. Summ. J., Ex. 3, Surma Dep. at 56:1-57:8; Pl.'s LR 56.1(b)(3)(B) ¶ 75.)  The '590 Patent's other named inventor, Mr. Leyden, testified that plaintiff's impetus for creating the invention

was that "[the cords] were sloppy on a display." (Defs.' Mem. Supp. Mot. Summ. J., Ex. 4, Leyden Dep. At 91:24.) Therefore, defendants have clearly and convincingly shown that no issue of material fact exists concerning whether the '590 Patent's inventors were aware of a problem that required a solution embodied in the '590 Patent at the time of invention.

Plaintiff contends that the declaration of Mr. Robert DiLonardo ("DiLonardo"), a retail security expert, regarding the lack of motivation to combine the prior art alone raises a genuine issue of material fact concerning obviousness that precludes summary judgment. (Pl.'s Mot. Opp'n Defs.' Mot. Summ. J. 13.) DiLonardo states: "in my opinion, there is nothing in the '805 Patent, the '098 Patent, or elsewhere in the Fields of Search for security alarm systems that would have motivated one of ordinary skill in the art such as me to combine the respective patents." (Pl.'s Mot. Opp'n Defs.' Mot. Summ. J., Ex. D, DiLonardo Decl. ¶ 7.) Indeed, as plaintiff contends, courts should take into account expert testimony when considering the obviousness of patent claims. *KSR*, 550 U.S. at 427. However, plaintiff confuses the role of conclusory declarations on the question of obviousness at summary judgment. *Id.* (stating that expert testimony may resolve or keep open questions of fact). Here, the Court finds that DiLonardo's conclusory statements resolve the question of fact regarding the presence of motivation to combine the prior art references. The only testimony DiLonardo gives in support of his statement is that "[t]he '805 Patent is limited to wall-mounted telephones and the telecommunications field, and does not disclose anything related to retail security, retail displays, security sensors and switches, alarm systems . . . or any other subject matter relevant to the retail anti-theft products." (Pl.'s Mot. Opp'n Defs.' Mot. Summ. J., Ex. D, DiLonardo Decl. at 7.) However, as discussed previously, the *KSR* Court expressly held that it is immaterial to

the obviousness analysis whether the prior teaching is in the same field as the patent-at-issue, and "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." *See* 550 U.S. at 417.

Plaintiff also argues that because the '805 Patent teaches away from a combination with the '098 Patent, there exists a genuine issue of material fact concerning obviousness that precludes summary judgment. (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 19.) Whether a prior art reference teaches away is a question of fact. *See Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995). "[A] reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Icon Health & Fitness*, 496 F.3d at 1381.

As the *KSR* Court expressly held, whether the prior art is from the same field as the ultimate patented invention is immaterial to the obviousness analysis if a predictable variation is evident. *See* 550 U.S. at 417. Therefore, the mere fact that the '805 Patent exists in the field of wall-mounted telephony and the '098 Patent in the field of retail alarm systems does not raise a genuine issue of material fact for trial.

Plaintiff relies on DiLonardo's declaration that "[t]he '805 Patent teaches away from a combination with the '098 Patent as it only discloses the placement of [a] single cord retracting device for a telephone on the wall whereas the invention of the '098 Patent requires alarm systems and many sensor-laden wires for use in retail displays." (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 20.) However, plaintiff fails to point to specific objective evidence in the prior art as to why a retractable reel assembly for a telephone extension cord would be

unworkable when substituted for the '098 Patent alarm system's retractable cord. For example, plaintiff does not proffer any teaching in the prior art that shows the '805 Patent retractable telephone cord reel would not remedy the problem of phone cords "laying all over" – the main objective of the invention. (*See* Defs.' Mot. Summ. J., Ex. 3, Surma Dep. at 56:19-20; Pl.'s LR 56.1(b)(3)(B) ¶ 75.) Also the present record is devoid of any evidence establishing that substituting the retractable reel embodied in the '805 Patent for the retractable cord disclosed in the '098 Patent alarm system would render the combination economically inviable. The DiLonardo declaration, therefore, does no more than create a metaphysical doubt on the issue of whether the prior art taught away from combination.

Furthermore, the Court finds it telling that the '805 Patent refers to the invention as a "very compact retractable reel assembly." (*See* Defs.' Mot. Summ. J., Ex. 5, '805 Patent, Abstract.) Also, the parties do not dispute that both the '098 Patent and the '805 Patent involve the use of phone cords. (*See* Pl.'s LR 56.1(b)(3)(B) ¶¶ 18, 21.) Therefore, contrary to plaintiff's assertion that the '805 Patent teaches away from combination with the '098 Patent, the Court finds it undeniable that a person of ordinary skill tasked with remedying the problem of telephone cords "laying all over" and using common sense would be led in a direction that embraces a "very compact retractable reel assembly," not a path that led in a direction divergent from ultimate combination. *See KSR,* 550 U.S. at 420 ("Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle."). Ultimately, the '098 Patent invites a combination with other known telephone retraction means like the invention embodied in the '805 Patent when it discloses the use of a

retractable cord. (*See* Defs.' Mot. Summ. J. '098 Patent, col. 4, line 23.) Therefore, the Court concludes that there exists no genuine issue of material fact as to whether the '805 Patent taught away from its ultimate combination with the prior art '098 Patent.

Tellingly, plaintiff does not contest the fact that the addition of a retractable telephone cord device embodied the '805 Patent to the '098 Patent would have produced a predictable result. Ultimately, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more that yield predictable results." *KSR,* 550 U.S. at 416. Defendants assert that because nothing on the record shows that testing was required when plaintiff substituted the reel-type retractor for the coiled cord-type retractor, the ultimate result was expected and predictable. (*See* Defs.' Mem. Supp. Mot. Summ. J. 13.) Plaintiff brings forth no evidence to refute this contention. Therefore, the Court concludes that no genuine issue of material fact exists concerning the fact that the combination of the '098 Patent and the '805 Patent produced a predictable result, namely, a retail security alarm with a retractable cord.

Lastly, the Court finds the arguments proffered by defendants concerning the secondary *Graham* considerations insufficient to overcome the strong presumption of obviousness apparent after analyzing the first three primary *Graham* factual considerations and the preceding obviousness inquiry. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009) ("[A] strong *prima facie* obviousness showing may stand even in the face of considerable evidence of secondary considerations."). Secondary considerations are the most probative in the obviousness analysis in some cases, but do not control the obviousness inquiry. *See Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997). Instead, secondary considerations "are but a

part of the 'totality of the evidence' that is used to reach the ultimate conclusion of obviousness." *See id.* (citing *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983)).

Plaintiff contends that because the invention embodied in the '590 Patent has achieved commercial success, the '590 Patent was nonobvious. (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 27.)  Evidence of nonobviousness may include the commercial success of the invention.  *See Graham*, 383 U.S. at 17-18.  Plaintiff has offered considerable evidence that the invention claimed in the '590 Patent has achieved substantial success in the marketplace.  For example, plaintiff provided testimony from Mr. Steven Kuhn, a third-party employee of OfficeMax, who stated that as of April 3, 2008, "big box stores," such as Circuit City and Best Buy, were still using some version of the '590 Patent's electronic recoiler security system.  (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J., Ex. C, Kuhn Dep. at 30:20-31:6.)  In addition, plaintiff provided testimony from Ms. Laura Greenwell, plaintiff's Vice President of Administration and Finance as of October 14, 2008, stating that "to date . . . [plaintiff has] sold more than $30 [m]illion in '590 patented system componentry since its introduction."  (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J., Ex. A, Greenwell Dep. at 2:5-6.)

However, "[a] nexus between the merits of the claimed invention and the evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision."  *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984).  In other words, plaintiff's evidence of commercial success is material "only if it flows from the merits of the claimed invention."  *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988).   Recently, in a post-*KSR* case, the Federal Circuit upheld a district court's grant of summary judgment, holding that "even though commercial embodiments of the . . .

18

invention may have enjoyed commercial success, [plaintiff's] failure to link that commercial success to the features of its invention that were not disclosed in [the prior art] undermines the probative force of the evidence pertaining to the success of [plaintiff's] products." *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *see J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (stating that "asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art"); *see also Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) (holding claims obvious when plaintiff failed to show that "such commercial success as its marketed system enjoyed was due to anything disclosed in the patent in suit which was not readily available in the prior art").

Plaintiff has failed to create a genuine issue of material fact regarding whether the commercial success of the invention embodied in the '590 Patent-at-issue was a product of anything beyond what the '098 and '805 prior art patents taught previously. Plaintiff merely posits that this commercial success was a result of a need in the marketplace for a retail alarm system that effectively managed cords. (*See* Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 25.) As the Court has explained, there exists no genuine issue of material fact regarding whether the '098 prior art patent discloses an alarm system and the '805 prior art patent discloses a system to manage telephone cords effectively. Therefore, because plaintiff has established no nexus between the claimed invention and commercial success beyond what was readily available in the prior art, facts relating to the patented invention's commercial success are immaterial.

Plaintiff also presents evidence that shows a long-felt need for a retail alarm system combined with a mechanism for effective cord management. (*See* Pl.'s Mem. Supp. Opp'n

Defs.' Mot. Summ. J. 24 ("[A]s substantiated by the testimony [presented by plaintiff], the best minds in the security alarm industry struggled with the wire management and electronic integration problem for years until [plaintiff] arrived at a solution in the early 1990s with the invention of the '590 [p]atent.").) However, such evidence of long-felt need is unpersuasive for the same reasons as plaintiff's evidence of commercial success. *See Asyst*, 544 F.3d at 1316.

Additionally, plaintiff argues that competitors' copying of the '590 Patent and plaintiff's substantial licensing of the invention present genuine issues of material fact that preclude summary judgment. (Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 25, 28.) However, plaintiff has failed to point to specific evidence that proves a nexus between copying in the marketplace or plaintiff's alleged substantial licensing and aspects of the invention not found in the prior art. *See SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1358 (Fed. Cir. 2000) ("[T]he mere existence of these licenses is insufficient to overcome the conclusion of obviousness, as based on the express teachings in the prior art that would have motivated one of ordinary skill to modify Stumpo's cells to be used with unknown compounds . . . . Moreover, SIBIA has failed to point to any evidence establishing a nexus between the licensing activity and the merits of the claimed screening method.")

Plaintiff offers only non-probative expert statements to support these two final secondary considerations. (*See, e.g.*, Pl.'s Mem. Supp. Opp'n Defs.' Mot. Summ. J. 25-26 ("DiLonardo agrees that Se-Kure's competitors copied the invention of the '590 Patent."); *id.* at 29 ("Se-Kure has sued all of its competitors over the '590 Patent and many of those competitors have taken licenses that specifically cover the '590 Patent"); *id.*, Ex. D, DiLonardo Decl. ¶¶ 22-23; *id.*, Ex. A, Greenwall Decl. ¶ 6.) The *KSR* Court emphasized that such statements are alone insufficient

to preclude summary judgment on obviousness.  *See* 550 U.S. at 426-27 ("To the extent the [Federal Circuit] understood the *Graham* approach to exclude the possibility of summary judgment when an expert provides a conclusory affidavit addressing the question of obviousness, it misunderstood the role expert testimony plays in the analysis.").  Therefore, the Court finds that there exists no genuine issue of material fact based on secondary considerations that overcomes the strong case for obviousness found in the prior art.

The Court finds the '590 Patent-at-issue invalid as obvious as a matter of law. Defendants have shown clearly and convincingly that no genuine issues of material fact exist concerning any of the primary or secondary *Graham* factors or whether a person of ordinary skill in the art would have found it obvious to combine the '098 and '850 prior art patents to arrive at the invention embodied in the claims of the '590 Patent.

## Conclusion

For the reasons provided above, the Court grants defendants' motion for summary judgment [doc. no. 188].  This case is hereby terminated.

**SO ORDERED.**                               **ENTERED:    9/18/2009**


**HON. RONALD A. GUZMAN**

**United States District Judge**